04-30124-MAP

AO 241 (Rev. 5/85)

PETITION UNDER 28 USC § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| **United States District Court** | District DISTRICT OF MASSACHUSETTS | |
|---|---|---|
| Name<br>ALEX DELGADO | Prisoner No.<br>W-55094 | Case No. |
| Place of Confinement<br>MCI CEDAR JUNCTION<br>S. WALPOLE, MA 02071 | | |
| Name of Petitioner (include name under which convicted)<br>ALEX DELGADO | V. Name of Respondent (authorized person having custody of petitioner)<br>KATHLEEN M. DENNEHY,<br>Commissioner of Corrections | |
| The Attorney General of the State of: MASSACHUSETTS | | |

## PETITION

1. Name and location of court which entered the judgment of conviction under attack HAMPDEN COUNTY SUPERIOR COURT, 50 STATE STREET, SPRINGFIELD, MA 01102

2. Date of judgment of conviction SEPTEMBER 21, 1993

3. Length of sentence LIFE IMPRISONMENT

4. Nature of offense involved (all counts) ACCESSORY BEFORE THE FACT TO FIRST DEGREE MURDER BY DELIBERATE PREMEDITATION AND EXTREME ATROCITY OR CRUELTY

5. What was your plea? (Check one)
   (a) Not guilty X
   (b) Guilty ☐
   (c) Nolo contendere ☐
   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury X
   (b) Judge only ☐

7. Did you testify at the trial?
   Yes X No

8. Did you appeal from the judgment of conviction?
   Yes X No ☐

AO 241 (Rev. 5/85)

9. If you did appeal, answer the following:

(a) Name of court SUPREME JUDICIAL COURT OF MASSACHUSETTS

(b) Result JUDGMENTS AFFIRMED

(c) Date of result and citation, if known 1/27/2003: 438 Mass. 556, (2003); Rehearing denied 4/2/2003

(d) Grounds raised SEE ADDENDUM "A"

(e) If you sought further review of the decision on appeal by a higher state court, please answer the following:

(1) Name of court N/A

(2) Result N/A

(3) Date of result and citation, if known N/A

(4) Grounds raised N/A

(f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

(1) Name of court N/A

(2) Result N/A

(3) Date of result and citation, if known N/A

(4) Grounds raised N/A

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions applications, or motions with respect to this judgment in any court, state or federal?

Yes X No ☐

11. If your answer to 10 was "yes," give the following information:

(a) (1) Name of court HAMPDEN COUNTY SUPERIOR COURT

(2) Nature of proceeding MOTION FOR NEW TRIAL

(3) Grounds raised SEE ADDENDUM "B"

AO 241 (Rev. 5/85)

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No X

(5) Result DENIED

(6) Date of result SEPTEMBER 7, 1999

(b) As to any second petition, application or motion give the same information:

(1) Name of court N/A

(2) Name of proceeding N/A

(3) Grounds raised N/A

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☐

(5) Result N/A

(6) Date of result N/A

(c) Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?

(1) First petition, etc. Yes X No ☐

(2) Second petition, etc. Yes ☐ No ☐

(d) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

12. State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting same.

CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.
(b) Conviction obtained by use of coerced confession.
(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
(e) Conviction obtained by a violation of the privilege against self-incrimination.
(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
(g) Conviction obtained by a violation of the protection against double jeopardy.
(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.
(i) Denial of effective assistance of counsel.
(j) Denial of right of appeal.

A. Ground one: SEE ADDENDUM "C"

Supporting FACTS (state *briefly* without citing cases or law):

B. Ground two: SEE ADDENDUM "C"

Supporting FACTS (state *briefly* without citing cases or law):

AO 241 (Rev. 5/85)

C. Ground three: SEE ADDENDUM "C"

Supporting FACTS (state *briefly* without citing cases or law):

D. Ground four: SEE ADDENDUM "C"

Supporting FACTS (state *briefly* without citing cases or law):

13. If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them: N/A

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
Yes ☐ No X

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:
(a) At preliminary hearing DAVID HOOSE, 1145 MAIN STREET, SPRINGFIELD, MA 01103

(b) At arraignment and plea SEE ABOVE

AO 241 (Rev. 5/85)

(c) At trial SAME AS ABOVE

(d) At sentencing SAME AS ABOVE

(e) On appeal JOHN M. THOMPSON, 1331 MAIN STREET, SPRINGFIELD, MA 01103

(f) In any post-conviction proceeding SAME AS ABOVE

(g) On appeal from any adverse ruling in a post-conviction proceeding SAME AS ABOVE

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
Yes ☐ No X

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐ No X

(a) If so, give name and location of court which imposed sentence to be served in the future: N/A

(b) Give date and length of the above sentence: N/A

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐ No ☐

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

John M Thompson
Signature of Attorney (if any)

June 30, 2004

I declare under penalty of perjury that the foregoing is true and correct. Executed on

______________________
Date

______________________
Signature of Petitioner

ADDENDUM A
ISSUES PRESENTED ON DIRECT APPEAL

1. Whether the jury instructions presenting accessory before the fact to first degree murder, viewed as a whole, violated Delgado's right to due process of law and created a substantial risk of a miscarriage of justice by [a] misdefining malice aforethought; [b] creating a conclusive presumption of cruelty in the extreme atrocity or cruelty theory, [c] permitting the jury to consider factors outside the Cunneen list,[d] omitting any requirement that the jury find deliberate premeditation on Delgado's part; and [e] directing the jury to convict Delgado as an accessory to whatever degree of homicide it found that Arriaga had committed?

2. Whether the judge's error in permitting the Commonwealth to elicit the testimony of a codefendant that he was selling drugs he received from Latin Kings headquarters, together with the prosecutor's deliberate introduction of an inadmissible statement that the Latin Kings were selling drugs and taking over neighborhoods, violated Delgado's right to confront and cross-examine an adverse witness and to due process of law, where this evidence tended only to show guilt by association and to impugn Delgado's character?

3. Whether the judge erred in permitting the prosecutor to emphasize that Cintron's agreement with the Commonwealth required truthful testimony and was given under her threat of a life sentence for perjury and erred further in failing to instruct that the Commonwealth had no ability to determine the truth of Cintron's testimony, where the prosecutor vouched for Cintron's truthfulness in her summation?

4. Whether the Commonwealth violated Delgado's right to due process, to confront and cross-examine Maria Mercado, and to present all proofs in his favor regarding her credibility by withholding the actual terms of Mercado's cooperation agreement and presenting a false and misleading version of the agreement to the jury?

5. Whether the single justice and the superior court violated Rule 30, Delgado's rights to due process of law, to equal protection of the law and to fair access to the courts by denying him access to available evidence and the financial resources needed to fully and effectively present his state and federal fair cross-section and ineffective assistance of counsel claims?

6. Whether the superior court erred in denying Delgado's state and federal fair cross section claims on the merits where he presented reasonably reliable evidence that Hispanic residents of Essex County had been substantially and systematically under represented in the jury venires from which his trial jury was selected?

A. Whether the superior court erred in finding that the Spanish surnames method of identifying Hispanic individuals was unreliable where [1] the evidence did not establish that any better method was available and [2] the Commonwealth had prevented Delgado from presenting any better evidence of ethnic identity?

B. Whether the superior court erred in applying the "absolute disparity" and its 10% tolerance of under representation to Hispanics where their representation in the adult

population was less than 10%?

C. Whether this Court should return to its earlier flexible approach of using analytical methods appropriate to the circumstances of each fair cross section claim rather than adhere to a single, doctrinaire method which is demonstrably inadequate to protect the fair cross section rights of groups protected by Article 1?

D. Whether, considering the limited evidence available to him, Delgado's proof of statistically substantial under representation, together with evidence that the exclusive reliance on city census data produced under representative jury lists, and evidence that the census data collection methods used in the Essex County cities where its Hispanic population was concentrated included discretionary elements which permitted discriminatory impact and actual discrimination, made out a prima facie case of systematic under representation of Hispanics in the source body from which his trial jury was selected?

7. Whether trial counsel were ineffective in failing to fully document Delgado's fair cross section claims before trial and in failing to preserve his appellate rights by contemporaneous objections to trial errors?

8. Whether this Court should exercise its Section 33E powers to order a new trial or reduce the degree of Delgado's conviction?

APPENDIX B
MOTION FOR NEW TRIAL CLAIMS PRESENTED

I. The summary denial of Alex Delgado's motion to dismiss the jury venire violates his right to trial by a jury selected from a fair cross section of his community as guaranteed him by Article 12 of the Declaration of Rights and by the sixth and Fourteenth amendments to the United States constitution.

A. Defense counsels' failure to support the motion to dismiss the jury venire with available supporting evidence constituted ineffective assistance of counsel.

B. The new and newly presented evidence that Hispanics were systematically underrepresented in the Essex County venire from which Defendant Delgado's trial jury was selected establishes that the racial and/or ethnic composition of his trial jury violated his fair cross-section rights.

C. The Commonwealth's failure to elicit and record the racial and ethnic identities of the members of the venires from which Delgado's trial jury were drawn deprived him of his rights to effective assistance of counsel and to due process of law.

II. The prosecution withheld the actual terms and conditions of Maria Mercado's cooperation agreement from the defense and made a false and materially misleading presentation of that agreement to the jury, depriving Petitioner of his rights to due process of law, to confront and cross examine Mercado and to present evidence of her lack of credibility and bias which was favorable to his defense.

III. The Commonwealth's agreement to reward its witnesses violated the state statute

prohibiting the payment of gratuities to witnesses and violated defendant's right to due process of law.

ADDENDUM C

GROUND ONE. Petitioner's right to an impartial jury representing a fair cross section of the community from which his jury was selected was violated. The factual basis for this claim is incomplete because Petitioner was prevented from developing the factual basis for this claim in the state courts. Petitioner was and is indigent. The state courts denied Petitioner's fair cross-section claim on its merits while also denying his requests for discovery and for money to hire the experts needed to assist him in preparing and presenting the evidentiary basis for his fair cross-section claim.

GROUND TWO. Petitioner's right to equal protection of the laws, to due process of law and to meaningful access to the courts was violated because [1] state officials failed to require prospective jurors to state their racial or ethnic identity or otherwise collect the information needed to determine whether the jury composition and selection system was actually providing a fair cross-section in the source bodies from which Petitioner's jury was chosen; [2] denied to Petitioner, who was indigent, the information and financial resources he needed to independently obtain the information necessary to litigate his federal constitutional fair cross-section claim in his direct appeal of his conviction; and [3] refused to accept Petitioner's substantial preliminary data as reliable for the limited purpose of ruling on his motions for the discovery and financial assistance he needed to fairly litigate his federal constitutional claim. As a consequence, Petitioner was completely foreclosed from presenting any evidence to support his claim that African Americans were systematically underrepresented in the source bodies and he

was prevented from meeting the state evidentiary standards imposed on his discovery and financial assistance requests.

The state court refused to acknowledge the Supreme Court's holdings in Hernandez v. Texas, 347 U.S. 475 (1954) and Castaneda v. Partida, 430 U.S. 482 (1977) that the Spanish Surnames system is a valid method of identifying Hispanic individuals. The state court ruled that Petitioner was required to obtain the numbered resident list that each city and town submits to the jury commissioner and the jury commissioner's randomly generated prospective jury list which, according to state law, are available to the public upon request. The state court overlooked Petitioner's proof that he requested and was denied this information. The state court also ruled that Petitioner was required to contact individual prospective jurors over an extended period to determine their ethnicity and race, overlooking the fact that Petitioner was and is indigent and was denied all funding requests.

GROUND THREE. Several jury instructions violated Petitioner's right to due process of law. [a] The judge erroneously instructed the jury that proof of anger, hatred, revenge or a selfish, wrongful motive constituted the "malice aforethought" element of murder. This instruction broadened the definition of malice and thereby diluted the prosecution's burden of proof. [b] The judge invaded the jury's fact finding discretion when, regarding the first degree murder element of extreme atrocity or cruelty, she instructed that "indifference to or knowledge of and pleasure in a victim's pain is cruelty, and extreme cruelty is only a higher degree of cruelty." [c] The judge's instructions on the first degree murder element of "extreme atrocity or cruelty" was unconstitutionally vague and

allowed the jury to convict Petitioner without actually finding extreme atrocity or cruelty as defined by Massachusetts law. [d] The cumulative effect of these instructions permitted the jury to convict Petitioner without finding every element of first degree murder.

GROUND FOUR. The prosecution withheld the actual terms and conditions of Maria Mercado's cooperation agreement from the defense and made a false and materially misleading presentation of that agreement to the jury, depriving Petitioner of his rights to due process of law, to confront and cross examine Mercado and to present evidence of her lack of credibility and bias which was favorable to his defense.

Petitioner's conviction as an accessory before the fact to murder Esteras was founded on evidence that, as a leader of the Latin Kings gang, he participated in a meeting in which the leadership ordered that Arriaga and Cintron kill Esteras for insulting the gang colors. A document signed by Delgado ordered that Esteras be terminated. Delgado testified, stating that the group ordered that Esteras be beaten up. Maria Mercado, one of the leadership group who was charged with conspiracy to murder reached an agreement with the Commonwealth under which she would receive "consideration" for her testimony. She testified that "terminated" meant "murdered."

The prosecution withheld the actual terms and conditions on which its rewarded witness Maria Mercado testified and made a false and materially misleading presentation of that agreement to the jury through Mercado's testimony. Mercado was charged with conspiracy to commit the murder for which Petitioner was on trial as an accessory before the fact. Mercado testified for the prosecution against Petitioner and

against another co-defendant, Hugo Morales, in separate trials under a single agreement that included some undefined prosecutorial "consideration" in the disposition of her conspiracy to murder charge in exchange for her "cooperation and truthful testimony." In Petitioner's trial, Mercado initially denied having any agreement with the prosecution. Under cross examination by Delgado's counsel, Mercado denied she would receive anything for testifying against Delgado. She refused to admit any expectation of leniency, denying that she even thought about it. T.VIII:277-284. She denied that she her testimony against Delgado was prompted by an agreement with the prosecution. Id:277. Mercado acknowledged that she faced a maximum sentence of 20 years imprisonment but denied she was offered any leniency or had given any thought to the penalties she faced. Id:281-283.

Under cross-examination by Arriaga's counsel, in unresponsive rejoinders, Mercado repeatedly asserted that she was testifying truthfully because she wanted to see justice done and her conscience demanded that she say what she said. E.g., T.IX:69-71. She continued to deny any expectations of leniency, insisting that she expected to be treated like any other defendant. T.IX:69-71. In fact, Mercado denied having any agreement with the District Attorney's office "about what is going to happen to you" and claimed she never discussed that subject with either the prosecutor or the chief investigator. T.IX:5-6. Only when she was shown the first page of a disclosure letter to Arriaga's counsel did Mercado admit she had made an agreement with the Commonwealth. Id.

Two weeks after she gave incriminating testimony against Petitioner, Mercado testified falsely in Morales' trial. Mercado's testimony in Morales' trial so strongly

conflicted with her testimony in Petitioner's trial that the prosecution agreed to allow Morales to plead guilty for a suspended sentence and probation on the conspiracy to murder indictment against him. The Morales trial judge, who also presided over Petitioner's trial, found that the Morales disposition "was in large measure" attributable to these discrepancies in Mercado's testimony. Despite Mercado's failure to testify truthfully, she was allowed to plead guilty to conspiracy to murder and, on the prosecution's recommendation, was sentenced to time served [485 days] in consideration for her testimony against Petitioner and Morales.

Under these circumstances, it is evident that Mercado's agreement to testify for the Commonwealth for consideration did not depend upon her testimony being truthful. Despite her demonstrated untruthfulness in Morales' trial she received very generous consideration in being allowed to plead guilty to conspiracy to murder Esteras in exchange for a "time served" sentence of 485 days. The implicit representation to the Delgado jury that, if she did not testify truthfully, she would be prosecuted for perjury and would not receive consideration for her testimony was untrue.

Ms. Mercado was a crucial witness in Delgado's trial. She claimed to have been present at the time when the local Latin Kings leadership, including Defendant Delgado, met to discuss how to deal with Cintron's confrontation and dispute with Esteras. T.VIII:74-75. She explained the organization's structure, ways of doing business and terminology. Id:72-79, 87-97. Mercado served as the Commonwealth witness who explained the circumstantial evidence [Id:97-101, 106-109], told the jury that Delgado had insisted that Esteras be executed, and that the written mission directive [signed by Delgado but not Morales] to "terminate" [murder] Esteras rather than to beat him, as

Delgado testified was his understanding and intention. Id:111-117. The conversations on which the accessory before the fact and conspiracy charges were based were of a piece, occurring in Ms. Mercado's apartment at 95 Bancroft Street as parts of a continuous sequence of events. Mercado's testimony was indispensable to the Commonwealth's allegation that Delgado intended that Esteras be killed to avenge Latin King honor, as it was to the Commonwealth's charge that Morales participated in a conspiracy to murder Esteras.

The jury was misled about the actual terms of Mercado's deal with the prosecution, which violated Petitioner's right to due process of law. Her importance as a witness made her false and misleading testimony regarding the terms of her agreement prejudicial.

GROUND FIVE. Defense counsel's performance was constitutionally deficient in the following particulars:

First, he failed to file a fully documented fair cross section challenge to the composition of the source bodies from which the trial jurors were drawn. Before trial, Petitioner was entitled, under the provisions of M.G.L. ch. 261 §28C, to sufficient funds to effectively develop and present his claim. In response to defense counsel's motion for a change of venue the trial judge decided to select a jury in Essex County and sequester it in Hampden County for trial. Defense counsel went to Essex County shortly before trial and, based on observations made of the venires who appeared for jury selection, made a fair cross-section challenge without having had the opportunity to fully investigate and document the factual basis of the claim. He did not request either

the time or the funds needed to accomplish that. After trial, the funds were not available to Petitioner under Massachusetts law and the information needed to prove the claim were not available. Petitioner was prejudiced by counsel's failure to thoroughly investigate and present this claim before trial.

Second, defense counsel failed to timely object to the trial judge's errors in instructing the jury, as set out in Ground Three. He also failed to request a cautionary instruction warning the jury to closely scrutinize Mercado's testimony, an instruction to which Petitioner was entitled on request.

The combined effect of these flaws in trial counsel's performance created constitutional prejudice in his trial.