UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ALEX DELGADO,<br>  Petitioner,<br><br>v.<br><br>KATHLEEN M. DENNEHY,<br>COMMISSIONER OF CORRECTION,<br>  Respondent. | Civil Action No. 04-30124-MAP |

RESPONDENT'S MOTION FOR RECONSIDERATION
OF ALLOWANCE OF SEALED EX PARTE MOTION

The respondent respectfully moves this Court to reconsider its granting of the petitioner's sealed ex parte motion seeking funds under the Criminal Justice Act, 18 U.S.C. § 3006A, for the retention of an expert to develop his claim that he was denied a fair trial in 1993 because the jury venire did not adequately represent a fair cross section of the Essex County community.

Respondent's counsel is not aware of the contents of the sealed motion[1] but wishes to call the Court's attention to certain facts regarding the petitioner's request that were specifically addressed by the Massachusetts Supreme Judicial Court on direct appeal.  *See Commonwealth v. Arriaga (and a companion case)*, 438 Mass. 556, 781 N.E. 2d 1253 (2003).[2] In *Arriaga,* the SJC rejected the petitioner's primary claim of error, that the jury trial venire unconstitutionally underrepresented Hispanic citizens.  In ruling on the issue the

---

[1] Counsel for the respondent has gleaned some information from the petitioner's status reports and motions to enlarge.

[2] Excerpts from the decision are included in an Appendix. *See* App. at 1-10.

2

SJC concluded that the petitioner had not met his burden of making a prima facie case of jury underrepresentation. *Id*. at 561. Specifically the SJC found that the petitioner had failed to show that the group (Hispanics) was not fairly and reasonably represented in the venires in relation to its proportion of the community and that underrepresentation was due to the systematic exclusion of the group in the jury selection process. *Id.* at 562. See *Commonwealth v. Prater*, 431 Mass. 86, 91, 725 N.E. 2d 233 (2000); *Commonwealth v. Bastarache*, 382 Mass. 86, 96, 414 N.E.2d 984 (1980).

The Court based its conclusion that the petitioner had failed to carry his burden of proof in several factors including the following:

- reliance on surname analysis alone to identify Hispanic jurors is invalid evidence of underrepresentation;

- the single venire brought into the court room for the petitioner's trial was an unacceptably small sample for the purpose of any statistical showing of underrepresentation;

- a defendant must do more than assess a small subsection of the venire present on a particular day in order the show that the group allegedly discriminated against was not fairly and reasonably represented in any venires in relation to its proportion of the community;

- the "absolute disparity" test employed by the SJC and widely used by most jurisdictions failed to support the petitioner's claim of underrepresentation;

- the "disparity of risk" test proposed by the petitioner has not been adopted by any jurisdiction that the SJC was aware of for determining whether a defendant's constitutional rights were violated;

- the petitioner failed to prove that any underrepresentation was due to systematic exclusion of Hispanics in the jury selection process;

- Essex County uses the "one day-one trial" system in which the county submits an annual census list to the jury commissioner;

3

- names from the census list are randomly sorted by a computer that then generates a list of randomly selected names for the jury pool;

- this system contains no element of subjectivity;

- the 1992 data supplied by the petitioner to support the contention that Hampden County jury pools underrepresent minorities is not probative of the practices in Essex County.

*Arriaga*, 438 Mass. at 561-573.  *See* Appendix. [3]

The SJC also ruled on the petitioner's posttrial motions for approval of costs and expenses to retain a statistician and Hispanic linguist, and efforts to seek disclosure of jury attendance lists and clerk's lists. *Arriaga*, 438 Mass. at 569. The motions were aimed at gathering information on the selection process of the Hampden County grand jury and Essex County trial jury. *Id.* The judge referred the motions to a single justice of this court. Following a hearing, the single justice denied the motions as to the grand jury and transferred the motions concerning the trial jury to the trial judge. The judge held a nonevidentiary hearing on the remanded motions. She denied the motions, concluding that the petitioner was unable to make a prima facie showing in support of his claims. Subsequently, the judge denied the defendants' motion to reconsider.

More than one year later, on July 31, 1997, the petitioner filed an ex parte motion for funds for "completing and supplementing the analysis of Essex County jury data previously presented in this case." The trial judge denied the motion on August 1, 1997. The petitioner appealed from the judge's denial of funds to a single justice of the Appeals

---

[3] The SJC also instructed the jury commissioner to require the disclosure of the racial and ethnic background of potential jurors on the juror confirmation form modeled after the Federal courts. *Arriaga,* 438 Mass. at 572. Disclosure of racial background information had been voluntary.

4

Court pursuant to G.L. c. 261, § 27D, who affirmed the judge's order.

The SJC found no error in the decisions of the trial judge and single justice on the posttrial motions. *Arriaga*, 438 Mass. at 569-571. It noted that:

- funds to engage experts are generally not available for defendants seeking posttrial relief;

- there was no abuse of discretion in denying the funds;

- posttrial discovery is not a matter of right; a prima facie case must first be established;

- the single justice found that there was little or no chance of success in the motion for a new trial with respect to the composition of the Hampden County grand jury that indicted the petitioner;

- the petitioner had failed to make a prima facie showing on which relief could be granted;

- the data supplied with respect to the Essex County trial jury was incompetent hearsay and the surname analysis unreliable.

Regarding the instant motion, the respondent suggests that the petitioner is seeking to re-litigate facts that already have been determined against him in state court. Having failed to make his case before the trial court, the Single Justice and the SJC, he nonetheless seeks funds and presumably new data to support a second or third bite of the apple in this federal habeas court. Moreover, any new factual basis for a habeas claim that was not before the state court would run afoul of the exhaustion requirement and risk dismissal of the petition. *See Rose v. Lundy*, 455 U. S. 509, 518-519 (1982). *See also Scarpa v. DuBois*, 38 F.3d 1, 6 (1st Cir. 1994) ("[i]n order to present a federal claim to the state court in a manner sufficient to satisfy exhaustion concerns, a petitioner must inform the state court of both the *factual* and legal underpinnings of the claims") (emphasis supplied), *cert. denied*,

5

513 U. S. 1129 (1995); *Nadworny v. Fair*, 872 F.2d 1093, 1096 (1st Cir. 1989) (habeas petitioner must present both *factual* and legal underpinnings of claim to state courts in order to find exhaustion) (emphasis supplied).

As this Court is aware, the habeas statute focuses exclusively on the state adjudication of the federal constitutional issue implicated and whether that decision was contrary to or an unreasonable application of clearly established Supreme Court law. The relevant statute allows funds for experts or other services upon a finding that the services are necessary, 18 U. S. C. § 3006(e)(1). The respondent submits that this Court has all the information it needs to decide whether the SJC's decision in *Arriaga* was contrary to or an unreasonable application of *Taylor v. Louisiana*, 419 U.S. 522 (1975) and progeny.[4]

## CONCLUSION

The respondent respectfully submits that the Court reconsider its decision to allow the sealed ex parte motion in light of the SJC's decision.

Respectfully submitted,

THOMAS F. REILLY
ATTORNEY GENERAL

---

[4] The proof required in a Sixth Amendment claim that a petit jury was not "drawn from a source fairly representative of the community" *Taylor v. Louisiana*, 419 U.S. 522, 538 (1975)) is stated in *Duren v. Missouri*, 439 U.S. 357, 364 (1979). A prima facie violation of the fair cross-section requirement is made out by a showing that (1) the group allegedly discriminated against is a "distinctive" group in the community, (2) that the group is not fairly and reasonably represented in the venires in relation to its proportion of the community, and (3) that underrepresentation is due to systematic exclusion of the group in the jury selection process. *Id.* See *Arriaga*, 438 U.S. at 562-563.

6

/s/ Annette C. Benedetto
**Annette C. Benedetto**
**Assistant Attorney General**
**Criminal Bureau**
**One Ashburton Place**
**Boston, Massachusetts 02108**
**(617) 727-2200**
**BBO No. 037060**

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above documents was served upon the petitioner's counsel by first class mail, postage pre-paid, on June 3, 2005, at the following address:

**John M. Thompson**
**Thompson & Thompson**
**1331 Main Street**
**Springfield, MA 01103**

/s/ Annette C. Benedetto
**Annette C. Benedetto**
**Assistant Attorney General**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ALEX DELGADO, | ) | |
|   Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-30124-MAP |
| | ) | |
| KATHLEEN M. DENNEHY, | ) | |
| COMMISSIONER OF CORRECTION, | ) | |
|   Respondent. | ) | |

## APPENDIX

Excerpts from *Commonwealth v. Arriaga*, 438 Mass. 556, 561-573 (2003)

    **II. Jury Composition.**

    The defendants argue that they were not afforded a fair trial because the jury venire did not adequately represent a fair cross section of the Essex County community. (FN2) Specifically, the defendants complain that the jury venire underrepresented the Hispanic population of Essex County. We conclude that the defendants have not met their burden of making a prima facie case of jury underrepresentation.

    We have delineated the characteristics of the jury contemplated by art. 12 of the Massachusetts Declaration of Rights, remarking that "a fair jury is one that represents a cross section of community concepts." Commonwealth v. Soares, 377 Mass. 461, 478, 387 N.E.2d 499, cert. denied, 444 U.S. 881, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979), quoting > Commonwealth v. Ricard, 355 Mass. 509, 512, 246 N.E.2d 433 (1969). A defendant is entitled to a jury selection process free from discrimination against groups in the community. Commonwealth v. Soares, supra, quoting Commonwealth v. Rodriquez, 364 Mass. 87, 92, 300 N.E.2d 192 (1973).

    The Supreme Court of the United States has affirmed the requirement that a jury fairly represent a cross section of the community. In Taylor v. Louisiana, 419 U.S. 522, 528, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), the Court held that "the selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial." The Taylor Court recognized that "excluding identifiable segments playing major roles in the community cannot be squared with the constitutional concept of jury trial." Id., quoting Thiel v. Southern Pac. Co., 328 U.S. 217, 227, 66 S.Ct. 984, 90 L.Ed. 1181 (1946) (Frankfurter, J., dissenting). The right to trial by a jury drawn fairly from a representative cross section of the community serves the critical

2

purposes of guarding against the exercise of arbitrary power and making available the commonsense judgment of the community.  Commonwealth v. Soares, supra at 479-480, 387 N.E.2d 499.  A jury cannot be an effective safeguard if it represents only special segments of the population, excluding distinctive groups from the pool.  Id. at 480, 387 N.E.2d 499, quoting Taylor v. Louisiana, supra at 530, 95 S.Ct. 692.  The "broad representative character of the jury should be maintained, partly as assurance of a diffused impartiality and partly because sharing in the administration of justice is a phase of civic responsibility."  Commonwealth v. Soares, supra, quoting Taylor v. Louisiana, supra at 530-531, 95 S.Ct. 692.

The requirement that a jury comprise a representative cross section of the community simultaneously ensures that the jury will contribute the community's commonsense judgment to the proceedings.  Commonwealth v. Soares, supra at 479-480, 387 N.E.2d 499.  "When any large and identifiable segment of the community is excluded from jury service, the effect is to remove from the jury room qualities of human nature and varieties of human experience, the range of which is unknown and perhaps unknowable.  It is not necessary to assume that the excluded group will consistently vote as a class in order to conclude, as we do, that its exclusion deprives the jury of a perspective on human events that may have unsuspected importance in any case that may be presented."  Commonwealth v. Soares, supra at 480-481, 387 N.E.2d 499, quoting Peters v. Kiff, 407 U.S. 493, 503-504, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972).

Despite these principles, we have recognized that a requirement that each jury include members of every group in the community is impracticable.  See Commonwealth v. Soares, supra at 481-482, 387 N.E.2d 499 (requiring mathematically representative venire would be impossible due to random nature of juror selection).  Furthermore, removal of jurors from a panel because of expressed bias impedes the ability to formulate a panel mathematically representative of all groups, yet removal of such persons is necessary to a fair trial.  Id. at 482, 387 N.E.2d 499.  We have therefore refrained from imposing a requirement that petit juries actually chosen must precisely mirror all groups in the community.  Id. Instead, "[w]hat both parties are constitutionally entitled to expect is 'a petit jury that is as near an approximation of the ideal cross-section of the community as the process of random draw permits.' "  Id. at 488, 387 N.E.2d 499, quoting People v. Wheeler, 22 Cal.3d 258, 277, 148 Cal.Rptr. 890, 583 P.2d 748 (1978).

To establish a prima facie case of unconstitutional jury selection under the Sixth and Fourteenth Amendments to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights, the defendants must show that (1) the group allegedly discriminated against is a "distinctive group" in the community, (2) that the group is not fairly and reasonably represented in the venires in relation to its proportion of the community, and (3) that underrepresentation is due to systematic exclusion of the group in the jury selection process.  > (FN3)  See Commonwealth v. Prater,
431 Mass. 86, 91, 725 N.E.2d 233 (2000), quoting Commonwealth v. Tolentino, 422 Mass.

3

515, 518-519, 663 N.E.2d 846 (1996). It is not disputed that Hispanics comprise a "distinctive group" within Essex County. See Commonwealth v. Tolentino, supra at 519, 663 N.E.2d 846. The defendants, however, fail to meet their burden on the second and third elements of their claim.

     To demonstrate the underrepresentation of Hispanics in their Essex County petit jury venire, the defendants submitted statistical data to the court as follows. (FN4) The defendants submitted census bureau statistics drawn from the 1990 Federal census stating that 5.5% of the Essex County adult population was Hispanic, and that the venire from which their trial jury was chosen consisted of 345 prospective jurors, of which the stenographer recorded 342 names. According to the defendants, only three surnames of those 342 prospective jurors were listed in the population division of the United States census bureau's Building a Spanish Surname List for the 1990's--A New Approach to an Old Problem. Use of the surname list to identify Hispanics is premised on the fact that more than two-thirds of Hispanic individuals living in the United States have a surname appearing on that list, which contains the 639 most frequently occurring "heavily Hispanic" surnames. The defendants further contend that using standard mathematical extrapolation techniques indicate that no more than five of the 342 prospective jurors identified by surname, or 1.46, were Hispanic.

Reliance on surname analysis alone to identify Hispanic jurors is invalid evidence of underrepresentation. See Commonwealth v. Fryar, 425 Mass. 237, 242, 680 N.E.2d 901, cert. denied, 522 U.S. 1033, 118 S.Ct. 636, 139 L.Ed.2d 615 [438 Mass. 564] (1997); Commonwealth v. Colon, 408 Mass. 419, 438 n. 11, 558 N.E.2d 974 (1990). As one court has noted:

     "The surname approach has [the] result of failing to account for 'Hispanics' who either through marriage or adoption obtain an English surname. Similarly, surname classifications fail to consider 'Hispanics' whose surnames are not commonly considered Spanish, whose surnames are a result of varied European ancestry, whose surnames have been Anglicized, or whose surnames are derived from other than Castillian Spain.... Non-Spanish surnames (e.g., Banchs, Dols, Galtieri, Cristiani, Domecq) are frequently found among Latin Americans but are not found in the Spanish surname lists." Alen v. State, 596 So.2d 1083, 1093 (Fla.Dist.Ct.App.1992), aff'd, 616 So.2d 452 (Fla.1993).

     The data the defendants offer does not meet their burden of showing underrepresentation for another reason. The single venire brought into the court room for the defendants' trial is an unacceptably small sample for the purpose of any statistical showing of underrepresentation. See Commonwealth v. Tolentino, supra at 520, 663 N.E.2d 846. A defendant must do more than assess a small subsection of the venire present on a particular day in order to show that the group allegedly discriminated against is not fairly and reasonably represented in the venires in relation to its proportion of the community. See id. A defendant must present evidence of a statistically significant

4

sample, usually requiring analysis of the composition of past venires. See id. (noting defendant failed to produce reliable data concerning "ordinary and regular composition of jury venires in Essex County"); Commonwealth v. Colon, supra at 438, 558 N.E.2d 974; Commonwealth v. Peters, 372 Mass. 319, 323, 361 N.E.2d 1277 (1977). See also Commonwealth v. Fryar, supra at 241, 680 N.E.2d 901; Commonwealth v. Bastarache, 382 Mass. 86, 96, 414 N.E.2d 984 (1980).

Other jurisdictions have endorsed the use of broad time frames for purposes of analyzing underrepresentation. See United States v. Rioux, 97 F.3d 648, 657 (2d Cir.1996) (suggesting life of master jury "wheel" sufficiently broad); United States v. Grisham, 63 F.3d 1074, 1078-1079 (11th Cir.1995), cert. denied, 516 U.S. 1084, 116 S.Ct. 798, 133 L.Ed.2d 746 (1996) (defendant must show underrepresentation[438 Mass. 565] in qualified jury wheel); Singleton v. Lockhart, 871 F.2d 1395, 1398 (8th Cir.), cert. denied, 493 U.S. 874, 110 S.Ct. 207, 107 L.Ed.2d 160 (1989) (defendant must show underrepresentation not only on his venire but also other venires in same judicial system near time of his trial); Timmel v. Phillips, 799 F.2d 1083, 1086 (5th Cir.1986) (same). The statistics offered by the defendants pertaining only to the defendants' own jury venire do not provide a large enough sample over a great enough period of time to demonstrate underrepresentation in the Essex County jury pool in any meaningful way.

In addition the defendants' data sample would not in any event support a claim of underrepresentation for purposes of art. 12. Consistent with the majority of jurisdictions, we apply the absolute disparity test to determine whether underrepresentation of a group is substantial. (FN5) Commonwealth v. Prater, 431 Mass. 86, 92, 725 N.E.2d 233 (2000), quoting Commonwealth v. Fryar, supra at 242-243, 680 N.E.2d 901 ("The majority of courts have looked to the absolute disparity test to determine whether underrepresentation of a group is substantial"). To calculate absolute disparity, the percentage of a group's population in the jury venire is subtracted from the percentage of the group's population in the community. See Commonwealth v. Fryar, supra at 243, 680 N.E.2d 901. In this case, eligible Hispanics comprise 5.5 per cent of the community and, according to the defendants' surname analysis, comprise 1.46 per cent of the jury venire. The absolute disparity in this case is therefore 4.04 per cent. Courts adopting the absolute disparity test have held that a disparity below 10 per cent is generally not substantial. Id., and cases cited. The disparity here, therefore, does not support a claim of a constitutional violation.

The defendants urge us to abandon the absolute disparity test in favor of other methods. They argue that because the Hispanic populations in nearly every county were under 11 per cent during the relevant time period, no defendant could successfully establish underrepresentation using the absolute disparity test. Although we are aware that the absolute disparity test has been criticized as being "too [ready to] tolerate a selection system in which the seemingly innocuous absence of small numbers of a minority from an average array creates an unacceptable probability that the minority members of the jury ultimately selected will be markedly deficient in number and sometimes totally

5

missing," United States v. Biaggi, 909 F.2d 662, 678 (2d Cir.1990), cert. denied, 499 U.S. 904, 111 S.Ct. 1102, 113 L.Ed.2d 213 (1991), it remains the test most widely used. Additionally, we do not apply the absolute disparity test mechanically, but rather consider the evidence of a disparity in light of the circumstances and the size of the population in question. Evidence of a disparity smaller than 10 per cent can support a conclusion of unconstitutional underrepresentation of smaller minority groups, especially when coupled with persuasive evidence of systematic exclusion. The circumstances of these cases and the absence of persuasive proof of systematic exclusion do not allow such a conclusion.

Furthermore, the methods the defendants suggest in place of the absolute disparity test are equally problematic. The defendants suggest that the comparative disparity test should be utilized. That test is calculated by subtracting the per cent population of the group in the venire from the per cent population of the group in the community, and then dividing the result by the per cent population of the group in the community. This method has been criticized mainly because it can overstate the degree of underrepresentation in the case of a small minority population, and relatively few courts apply it. See Commonwealth v. Fryar, supra at 242-243 n. 6, 680 N.E.2d 901, citing Note, A Proposal for Measuring Underrepresentation in the Composition of the Jury Wheel, 103 Yale L.J. 1913 (1994) (discussing shortcomings of comparative disparity test). In this case, the comparative disparity test is not a reliable indication of Hispanic underrepresentation in jury venires, and for the same reasons stated in the Fryar case, we decline to adopt that test. Id.

The defendants also suggest that we adopt the "disparity of risk test." That test measures the likelihood that the difference between a group's representation in the jury pool and its population in the community will result in a significant risk that the jury will not fairly represent the group. See Note, supra at 1929-1935. We are not aware of any jurisdiction that has adopted this test for determining whether a defendant's constitutional rights are violated by statistical underrepresentation in the jury pool, and we decline to adopt it now. Statistical analysis may develop other methodologies that do not suffer the failings of the methods considered here, and our endorsement of one should not be considered as a complete foreclosure of others. See United States v. Royal, 174 F.3d 1, 6-7 n. 3 (1st Cir.1999).

The defendants have also failed to prove that any underrepresentation was due to systematic exclusion of Hispanics in the jury selection process. Exclusion is systematic when it is inherent in that process. See Smith v. Commonwealth, 420 Mass. 291, 294, 649 N.E.2d 744 (1995), quoting Duren v. Missouri, 439 U.S. 357, 366, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). Essex County, like all others, uses the "one-day one-trial" system set forth in G.L. c. 234A, in which the county submits an annual census list to the jury commissioner. Names from the census list are randomly sorted by a computer that then generates a list of randomly selected names for the jury pool. See Commonwealth v. Tolentino, supra at 523, 663 N.E.2d 846; Commonwealth v. DeArmas, 397 Mass. 167, 170, 490 N.E.2d 433 (1986). This system contains "no element of subjectivity in the compilation of the venire" and has

6

"much to commend it for its assurance of randomness in the selection process." Commonwealth v. Colon, supra at 438, 558 N.E.2d 974. See Commonwealth v. Tolentino, supra at 523, 663 N.E.2d. The one-day one-trial system, of course, "cannot completely ensure a jury pool that reflects the community's composition, if the basic data from which the selection is made fails to reflect, with some degree of accuracy, that composition." Id.

The defendants contend that data collection practices in major cities in Essex County resulted in the systematic exclusion of Hispanics from the annual census lists and, therefore, from Essex County venires. In support of their argument, the defendants rely, inter alia, on the February 14, 1992, report of the Hampden County district attorney's commission on civil rights (report), which concluded that it was likely that minorities were underrepresented in Hampden County jury pools because of data collection practices in Holyoke and Springfield, cities with the largest black and Hispanic populations. The defendants also point to the fact (as found in that report, as well as reports of the Supreme Judicial Court's Commission to Study Racial and Ethnic Bias in the Courts) that a disproportionate number of undeliverable summonses are addressed to inner city locations. According to 1990 census bureau data, 74.5% of Massachusetts's Hispanic residents live at central city addresses. Whatever the merits of these claims, we agree with the judge that this evidence is not probative of the practices in Essex County. The February, 1992, report of the district attorney only analyzed data from Hampden County, and the court's commission study focused on Suffolk, Worcester, and Hampden counties. See Commonwealth v. Tolentino, supra at 518, 521-522, 663 N.E.2d 846.

The defendants also claim that 89.3% of Essex County's Hispanic population lives in the cities of Haverhill, Lynn, Lawrence, Peabody, and Salem. The defendants aver that, in each city, unreliable and discretionary practices resulted in systematic exclusion of Hispanics from the jury pool. While the proffer suggests that census collection procedures may not fully identify all residents who are potentially available for jury duty, the defendants have not demonstrated that these practices resulted in systematic exclusion of Hispanics from the jury pools in Essex County as a whole. We once again "encourage aggressive attempts to contact those who do not respond to make the juror lists as complete as possible. Ultimately, however, the completeness and accuracy of the juror lists depends in large part on the cooperation of citizens." Commonwealth v. Fryar, supra at 244, 680 N.E.2d 901.

We conclude that the judge did not abuse her discretion in denying the defendants' motions to dismiss the venire and for a new trial. In this capital case, and on our own review of the record, we also conclude that the composition of the jury that convicted the defendants did not give rise to a substantial likelihood of a miscarriage of justice.

**III. Posttrial Motions**.

7

After trial, the defendants moved for approval of costs and expenses to retain a statistician and Hispanic linguist, and sought disclosure of jury attendance lists and clerk's lists. The motions were aimed at gathering information to present challenges to the selection process of the Hampden County grand jury and the Essex County trial jury. The judge referred the motions to a single justice of this court. Following a hearing, the single justice denied the motions as to the grand jury and transferred the motions concerning the trial jury to the trial judge, who was in a better position to gauge their worth.

The judge held a nonevidentiary hearing on the remanded motions. She denied the motions, concluding that the defendants were unable to make a prima facie showing in support of their claims. Subsequently, the judge denied the defendants' motion to reconsider. More than one year later, on July 31, 1997, the defendants filed an ex parte motion for funds for "completing and supplementing the analysis of Essex County jury data previously presented in this case." The trial judge denied the motion on August 1, 1997. The defendants appealed from the judge's denial of funds to a single justice of the Appeals Court pursuant to G.L. c. 261, § 27D, who affirmed the judge's order.

A. Motions for funds to engage experts. (FN6) Funds are generally not available under G.L. c. 261, § 27C, for defendants seeking posttrial relief. See Commonwealth v. Serino, 436 Mass. 408, 415-416, 765 N.E.2d 237 (2002); Commonwealth v. Carter, 429 Mass. 266, 270, 708 N.E.2d 943 (1999); Commonwealth v. Davis, 410 Mass. 680, 682-684, 574 N.E.2d 1007 (1991). There was no abuse of discretion or error of law in the denials of these motions. See Commonwealth v. Sowell, 412 Mass. 1009, 590 N.E.2d 1161 (1992).

B. Posttrial discovery motions. Discovery in the context of a new trial motion under Mass. R.Crim. P. 30(c)(4), 378 Mass. 900 (1979), is not a matter of right. The motion and affidavits must first establish a prima facie case before discovery is available. Once that hurdle is cleared, discovery is within the judge's broad discretion. Cf. Commonwealth v. Stewart, 383 Mass. 253, 261, 418 N.E.2d 1219 (1981).

We review the rulings of the single justice for abuse of discretion or error of law. See Commonwealth v. Sowell, supra. The single justice concluded, "[T]here is little or no chance of success in any motion for a new trial that might be presented with respect to the composition of the Hampden County grand jury that indicted the defendants," citing Commonwealth v. Pope, 392 Mass. 493, 497-506, 467 N.E.2d 117 (1984). The single justice did not abuse his discretion in denying discovery as to the Hampden County grand jury.

After reviewing the defendants' motions with respect to the Essex County trial jury, the judge concluded that the defendants had not made a prima facie showing on which relief could be granted and thus denied their motions. The judge rejected the informal survey of Essex County bar advocates as to the composition of juries in Essex County and the statistical analysis of that data as incompetent hearsay, and noted that the use to which the defendants sought to put information from the jury commissioner (namely, surname

8

analysis) was unreliable. She further stated "that the defendants did not present any theory as to how the jury selection procedure in Essex County systematically excluded Hispanics from the jury venire." Although the judge did not specifically address the defendants' requests for a demographer, raised for the first time in their motions to reconsider, her conclusions are supported by the record and her denial of the defendants' motions did not result from an abuse of discretion.

The defendants protest that the judge acted on their motion without holding an evidentiary hearing. Whether to hold an evidentiary hearing under Mass. R.Crim. P. 30, 378 Mass. 900 (1979), is a matter soundly within the judge's discretion, to which we defer. See, e.g., Commonwealth v. Birks, 435 Mass. 782, 792, 762 N.E.2d 267 (2002); Commonwealth v. Sullivan, 435 Mass. 722, 733-734, 761 N.E.2d 509 (2002). In exercising her discretion, the judge must determine whether the motion or affidavits give rise to a "substantial issue" that would require an evidentiary hearing. See Commonwealth v. Birks, supra; Commonwealth v. Sullivan, supra; Commonwealth v. Britto, 433 Mass. 596, 608, 744 N.E.2d 1089 (2001). Whether a substantial issue has been raised depends on the seriousness of the issue and the adequacy of the defendants' showing. See Commonwealth v. Sullivan, supra; Commonwealth v. Britto, supra. The judge's conclusion that the defendants' motion and affidavits did not raise a substantial issue are entitled to substantial deference. See id. We conclude that the judge did not abuse her discretion in declining to afford the defendants an evidentiary hearing.

C. Information on race and ethnicity. The right to a trial before a jury representing a fair cross section of the community is a critical constitutional protection and should be scrupulously honored by providing defendants with reasonable access to accurate information concerning the race and ethnicity of prospective jurors. Racial and ethnic bias in the Massachusetts courts is an issue of long-standing concern. In response to the recommendations contained in the report of the Supreme Judicial Court's Commission to Study Racial and Ethnic Bias in the Courts, the office of the jury commissioner requests prospective jurors voluntarily to disclose their racial and ethnic background in the juror confirmation form. This information has been collected since 1996, and the jury commissioner's office keeps statistics based on responses that are submitted. This approach, however, is no longer sufficient.

Asking prospective jurors voluntarily to provide information concerning membership in a racial or ethnic minority on juror confirmation forms has proved to be an inadequate source of information for defendants seeking to establish a claim of underrepresentation. See Commonwealth v. Tolentino, 422 Mass. 515, 521-522, 663 N.E.2d 846 (1996). Self-identification is the most commonsense method for determining the ethnic and racial composition of the jury venire, but our current method of asking for mere voluntary disclosure of this information fails to compile the information we need to assess the issue of underrepresentation.

9

More proactive measures are required in order to confront issues of racial and ethnic prejudice in the courts, both actual and perceived. The Federal courts require potential jurors to provide information on race, informing jurors that the information is required solely to enforce nondiscrimination in jury selection. See 28 U.S.C. § 1869(h). We now adopt the same approach, and instruct the jury commissioner, as soon as practicable, to require the disclosure of racial and ethnic background of potential jurors on the juror confirmation form, (FN7) which should be modeled after the "juror qualification form" used in the Federal courts.

This gap in the court's own gathering of information, however, does not relieve the defendants of their burden of proving a prima facie case with reliable data. Commonwealth v. Tolentino, supra, citing Commonwealth v. Aponte, 391 Mass. 494, 497 & n. 7, 462 N.E.2d 284 (1984). The defendants were not without access to basic information from which they could proceed to discover the ethnic identity of the prospective jurors. Pursuant to G.L. c. 234A, §§ 10, 15, the numbered resident list that each city and town submits to the jury commissioner and the commissioner's randomly generated prospective jury list for each city and town are available on request. See Commonwealth v. Aponte, supra at 497, 462 N.E.2d 284 (defendants utilized mailing list to personally contact grand jurors to determine ethnicity and race). Thus, our change in gathering this information henceforth has no impact on the present case.

***

(FN2.) Because of concerns over pretrial publicity, in lieu of a change in venue, the defendants were tried in Hampden County by a jury selected from Essex County.

(FN3.) "When our decisions on jury composition are read together, it is apparent that art. 12 affords [defendants] at least as much protection as the Sixth and the Fourteenth Amendment[s]." Commonwealth v. Fryar, 425 Mass. 237, 244, 680 N.E.2d 901, cert. denied, 522 U.S. 1033, 118 S.Ct. 636, 139 L.Ed.2d 615 (1997), and cases cited.

(FN4.) The defendants provided no data to support an argument that Hispanics were underrepresented in the Hampden County grand jury venire, and they have abandoned that argument on appeal. We focus only on their claims of underrepresentation in the Essex County petit jury venire.

(FN5.) A majority of jurisdictions apply the absolute disparity test. See Duren v. Missouri, 439 U.S. 357, 364-366, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979); Castaneda v. Partida, 430 U.S. 482, 495-496, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977); United States v. Williams, 264 F.3d 561, 568-569 & n. 4 (5th Cir.2001); United States v. Royal, 174 F.3d 1, 6-11 (1st Cir.1999) (rejecting comparative disparity in favor of absolute disparity test); United States v. Clifford, 640 F.2d 150, 155-156 (8th Cir.1981), cited in United States v. Rogers, 73

F.3d 774, 775-777 (8th Cir.), cert. denied,  517 U.S. 1239, 116 S.Ct. 1889, 135 L.Ed.2d 183 (1996) (applying absolute disparity for reason of stare decisis);  United States v. Sanchez-Lopez, 879 F.2d 541, 547 (9th Cir.1989).

 (FN6.) The defendants appealed the trial judge's denial of their motions for funds to a single justice of the Appeals Court pursuant to G.L. c. 261, § 27D, whose determination is generally considered to be final and not subject to review in this court.  See Sinath Im v. Commonwealth, 432 Mass. 1018, 733 N.E.2d 105 (2000).  However, we have held that the denial of a motion for funds to retain experts, in conjunction with a new trial motion, would be treated as properly before this court on the defendant's direct appeal in a capital case.  See Commonwealth v. Erdely, 430 Mass. 149, 154, 713 N.E.2d 965 (1999).

(FN7.) See G.L. c. 234A, § 21.