UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL NO. 04-30124-MAP

ALEX DELGADO, Petitioner,

vs.

KATHLEEN M. DENNEHEY, Respondent.

PETITIONER'S MEMORANDUM IN SUPPORT OF APPLICATION
FOR CERTIFICATE OF APPEALABILITY

The purpose of a certificate of appealability [COA] is to weed out only the most unworthy of appeals. Under the Supreme Court's interpretation of 28 U.S.C. §2253 this Court must grant Delgado a COA on a particular issue if a reasonable jurist could find the correctness of this Court's ruling on that issue to be merely debatable. This is so even if the Court is completely convinced that it came to the correct decision. Miller-El v. Cockrell, 537 U.S. 322, 338 (2003).

I. Applicable Standards Governing Consideration Of An Application For A COA.

In considering whether to issue a COA, this Court must consider each issue separately and issue a COA for each issue that meets the §2253 standard as interpreted by the Supreme Court. Bui v. DiPaolo, 170 F3d 232, 237 (1st Cir. 1999). If the Court is in doubt whether to issue the COA, it must resolve those doubts in favor of granting it. Miller v. Johnson, 200 F3d 274, 280-281 (5th Cir. 2000). For each issue as to which the Court denies a COA, it must state its reasons. Lopez v. United States, 344 F. Supp. 2d 777, 780 (D. Mass 2003); Local Rule 22.1(a).

1

Section 2253 requires that Delgado make "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). This phrase was taken directly from the Supreme Court's earlier "Certificate of Probable Cause" jurisprudence under the pre-AEDPA §2253 and Barefoot v. Estelle, 463 U.S. 880, 893 (1983). In Barefoot, the Court emphasized that the petitioner need *not* demonstrate that

> "he should prevail on the merits. . . ; he must demonstrate [only] that the issues are *debatable* among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'"

463 U.S. at 893 n. 4 (emphasis added). In Miller-El the Court re-emphasized that the determination of whether to grant a COA is a "threshold" inquiry. 537 U.S. at 327, 336. The "debatable among jurists of reason" standard is designed to be permissive rather than restrictive. Id., at 327; Banks v. Dretke, 540 U.S. 668, 705 (2004). In Miller-El the Court reiterated that it

> "do[es] *not* require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, *a claim can be debatable even though every jurist of reason might agree*, after the COA has been granted and the case has received full consideration, *that petitioner will not prevail*."

537 U.S. at 338 (emphasis added). In short, "debatable" means just that.

> "This threshold inquiry (of debatability) does not require full consideration of the factual or legal bases adduced in support of the claims. *In fact, the statute forbids it.*"

537 U.S. at 336 (emphasis added). The Court emphasized that the court considering the COA application – whether the district court or the court of appeals – lacks the jurisdiction to consider the merits in this proceeding: "As we have said, a COA determination is a separate proceeding, one distinct from the underlying merits." Id., at 342. "The question is the debatability of the underlying constitutional claim, not the resolution of that debate."

2

Id. Given this permissive standard, this Court should issue a COA on Delgado's claims one, four and that part of five which pertains to claim one.

## II. Reasons Why COA Should Issue As To Delgado's Claims.

Delgado pleaded five claims: [1] denial of his Sixth Amendment right to an impartial jury representing a fair cross section of the community from which his jury is drawn; [2] denial of his rights to equal protection, due process and access to the courts in relation to his efforts to prove his Claim One; [3] inaccurate description of the elements of murder in the trial court's jury instructions; [4] the prosecution withheld the actual terms and conditions of Maria Mercado's cooperation agreement and made a false and materially misleading presentation of that agreement to the jury; and [5] ineffective assistance of counsel in trial counsel's failure to adequately document Claim One and failure to object to the errors underlying Claim Three. In this Court, Delgado withdrew Claim Three and that part of Claim Five which depended on Claim Three. He does not seek a COA with respect to these claims.

Consideration of whether to issue a COA as to a claim, the Court must distinguish between statutory provisions which apply solely to the granting of habeas relief [e.g., §§2254(d)(2) and (e)(1)] and focus on the elements of the constitutional claim. Miller-El, 537 U.S. at 340-343.

### A. Claim One: Fair Cross-Section.

The Court ruled that Petitioner's fair cross-section claim failed on the application of the "absolute disparity" test to his claim, which the majority of courts apply, but which is not mandated by Supreme Court precedent. Petitioner here was able to demonstrate that only 1.46% of the jury pool he was able to identify were Hispanic, resulting in an absolute

3

disparity of 4.05%. Slip Opinion, 33, 39. The absolute disparity test tolerates disparities up to 10%. Id., 35. Thus the measure employed by the SJC would have tolerated the complete exclusion of Hispanics from the Delgado's jury pool. Other statistical measures demonstrated that the disparity was significant. The legal standard at issue is whether the representation of Hispanics was "fair and reasonable." Duren v. Missouri, 439 U.S. 357, 364 (1979). Petitioner advocated in the SJC, and in this Court, that this issue be resolved using a combination of statistical measures, including the "comparative disparity" and "disparity of risk" methods. The issue is whether the SJC's refusal to do so constituted an unreasonable application of Supreme Court precedent such as Duren and Swain v. Alabama, 380 U.S. 202 (1965). Duren did not apply the absolute disparity test[1] nor direct that it be used in fair cross section cases; Swain utilized it in evaluating an equal protection case in which the 10% threshold was suited to the demographics of the case. In Duren, the Court identified the constitutional issue as whether women were "reasonably represented" in the venires and concluded that, because they constitute "slightly over half" of the population but only one-sixth of the venires, a "gross discrepancy" between the percentage of the women in the venires and the percentage of women in the community had been established. 439 U.S. at 365-366. "Absolute disparity" is not discussed[2] and the Supreme Court has never endorsed it in a fair cross-section case. It's non-technical assessment of the evidence in Duren strongly suggests that courts have become so distracted with methods of analysis that the objective of the analysis has been obscured.

---

[1] See, Petitioner's Memorandum In Opposition, 15-16.

[2] It can be calculated from the information in the opinion, but the other measures advocated by Petitioner can also be calculated from the same information.

4

The fact that the Supreme Court has not required application of a particular statistical method does not mean that there is no clearly established Supreme Court precedent on this issue. The precedent is quite clear: the minority group must be "reasonably represented." Whether resolving that issue by using a method of analysis which would tolerate the total exclusion of Hispanics from Essex County juries constitutes a reasonable application of Supreme Court precedent is debatable, but Miller-El teaches that this Section 2254(d)(1) criterion is applicable only to this Court's ruling on the merits; it does not apply to the COA assessment. Miller-El, 537 U.S. at 340-343.

Thus the fact that, in applying the "absolute disparity" test, the SJC acted in accordance with the majority of the circuit courts [Slip Opinion, 38] does not eliminate the debatability of Petitioner's arguments. As to the third fair cross-section element, Petitioner presented evidence that the under-representation of Hispanics in the venires reflected systematic exclusion. This Court did not address that element, resting its ruling on its assessment of the second. In debatability terms, Petitioner has presented a case on each of the three Duren elements of a fair cross section claim.

Thus the question of whether Hispanics were "reasonably represented" in Petitioner's jury pools is reasonably debatable within the meaning of §2253 as elucidated in Miller-El. A COA should be issued on this claim.

B. Claim Four: Presentation Of False Testimony And Withholding Exculpatory Evidence.

Maria Mercado testified repeatedly in Delgado's trial that she had been promised no reward for her testimony and did not expect to receive any. There was no written agreement between her and the prosecution; the only writing reflecting an agreement was

5

a disclosure letter written by the trial prosecutor to defense counsel. This agreement posited assistance with her children and consideration in resolving the charge pending against her. Mercado disavowed it in testimony elicited by the prosecutor; she had not decided whether to have a trial and so did not know whether she would ever be sentenced. Dkt. No. 36, Trial Tr. Vol. 10, 65-66, 69-71. Nevertheless, her cooperation with the prosecution was to be taken into account in some way. The only form of cooperation mentioned in the disclosure letter was "truthful testimony." Id, 65. This agreement covered her testimony in both the Delgado trial and the Morales trial. Mercado lied in her Morales testimony is a way that forced the prosecutor to expose specific falsehoods and also forced the prosecutor to give a lenient plea agreement to Morales. The disclosure of specific false testimony by Mercado ruined the Morales prosecution for conspiracy to murder. Her false testimony concerned the conversations in the meeting between, inter alia, Morales and Delgado in which Mercado claimed the order to murder Esteras was made.

Nevertheless, a week after her Morales testimony, Mercado pleaded guilty and was sentenced to time served by agreement between the prosecutor and her attorney.

One aspect of Delgado's claim is that Mercado's testimony denying that she had an agreement with the prosecutor was false, as was her testimony that her cooperation was motivated solely by her conscience-driven need to tell the truth. A second aspect is that the actual terms of the agreement, as presented by the prosecutor, were not truthfully disclosed to the defense and the jury. That is, either the terms of the agreement as presented were not true or the prosecution did not regard them as binding. That is, it may be that the prosecutor felt free to disregard the requirement of truthful testimony in assessing the helpfulness of the witness's testimony.

6

This Court concluded that the state court record permits the conclusion that Mercado's false testimony had an innocent explanation: "It is more likely that the strain of testifying against individuals who had threatened to harm her children caused Mercado to fall apart during the Morales trial." Slip Opinion, 48. This is certainly debatable, but it does not address her false testimony in Delgado's trial. It is not necessary for Petitioner to prove that the "Commonwealth courts overlooked clear and convincing evidence of a clandestine agreement that would have violated both state and federal law." Id. That ruling incorporates a Section 2254(d)(1) standard which has no place in this COA determination. The manner in which Mercado's agreement with the prosecution was presented to Delgado's jury; the circumstances under which she lied to the Morales jury; and the disposition of the charges against her support reasonable inferences that false testimony on her part was excusable all along or excused after the fact. The crucial issue is whether the Delgado jury was misled by the evidence presented to it regarding Ms. Mercado's incentives and motivations to testify truthfully.

The Court appears also to have reasoned that the Mercado agreement did not actually require truthful testimony on her part if, in the prosecutor's assessment, other elements of her cooperation were considered sufficiently beneficial to overcome the delict of false testimony. Slip Opinion, 48-49. If this was how the agreement was intended to work, it was misrepresented to the Delgado jury because such an agreement would permit the witness to "commit perjury with impunity" [as she demonstrably did]. Slip Opinion at 47 n. 26.

As the Court's ruling on this issue discloses, it is necessary to engage in debate simply to resolve Claim Four. A COA on this claim should be issued.

7

C. <u>Claim Five: Ineffective Assistance of Counsel</u>.

Petitioner claims that trial counsel's failure to make his fair cross-section claim at the time and in the manner required by state law, when he was entitled to financial assistance and the necessary evidence was at hand, constituted ineffective assistance of counsel. As noted above, Petitioner has withdrawn that part of this claim which faulted trial counsel's failure to object to jury instructions. As this Court noted, when Petitioner's attorney tried to develop his fair cross section claim in post-conviction proceedings, state officials refused to disclose the information to which he was statutorily entitled and the state courts refused to provide him the expert assistance he needed to effectively develop and present this federal constitutional claim.

This Court ruled that the SJC's well-supported view of the governing law rendered any effort to prove this claim futile. Slip Opinion, 51. As set forth in Section A, supra, the Court's view of the applicable law is debatable. Further, Delgado's inability to demonstrate that better data would have been available in September 1993 is attributable to the state courts' refusal to permit him to discover and develop this claim. Ineffective assistance of counsel can result from governmental interference in counsel's efforts to represent a defendant. <u>United States v. Cronic</u>, 466 U.S. 648, 659 n. 25 (1984). Because of its relationship to Claim One and because the merits of this claim are debatable, a COA should issue on it.

## CONCLUSION

For the reasons stated above, this Court should issue a COA authorizing Delgado to appeal Claims One, Four and Five.

8

Respectfully submitted,
ALEX DELGADO, PETITIONER


By /s/ John M. Thompson
John M. Thompson
Federal Bar No. 22530
Thompson & Thompson, P.C.
1331 Main Street, Suite 320
Springfield, MA 01103
[413] 739-2100
[413] 739-2300 facsimile


Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper will copies will be sent to those indicated as non registered participants on this 8th day of February, 2008.

/s/ John M. Thompson
John M. Thompson